ENGLEHART, RESPONDENT, *v.* SAGE, SHERIFF, APPELLANT.

(No. 5,650.)

(Submitted March 24, 1925.   Decided April 9, 1925.)

[235 Pac. 767.]

*Conversion—Wrongful Attachment of Debt—Conditional Sale
Contracts—Remedies—Appeal—Printing of Record — Rules.*

Conditional Sale Contract—Nature of Transaction.
   1.  A contract of sale of personal property under which title is to
   remain in the seller until the purchase price is paid in full is not a
   sale but an executory agreement to sell.
Appeal—Printing of Record—Rule must be Complied With.
   2.  Where appellant relies upon the insufficiency of the evidence to
   justify the verdict he must comply with the requirement of subdivision
   1, Rule VI, Rules of the Supreme Court, by having the transcript
   printed, otherwise he is not entitled to have the evidence considered.
Conversion — Attachment of One Person's Property to Satisfy Claim
   Against Another.
   3.  Attachment of one person's property to satisfy a claim against
   another constitutes a conversion, whether the property be actually
   seized by the sheriff or attached by service of a copy of the writ and
   notice to the person in possession.
Same—What Constitutes.
   4.  Any distinct act of dominion wrongfully exerted over one's prop-
   erty in denial of his right, or inconsistent with it, is a conversion.
Same—A Debt Proper Subject of Attachment.
   5.  Under sections 9261 and 9262, Revised Codes of 1921, a debt is
   "property" which may be attached, and a levy upon it operates to im-
   pound it and in effect to place it in the custody of the law and be-
   yond the control of its owner; hence where a debt due plaintiff was
   wrongfully attached in an action against another, the seizure amounted
   to a conversion.
Same—Availability of Other Remedies No Bar to Action.
   6.  The fact that plaintiff in an action for conversion against a
   sheriff for the wrongful seizure of his property in the hands of another
   might have pursued other remedies did not impair his right to main-
   tain the one he did bring.

---

Appeal and Error, 4 C. J., sec. 2185, p. 458, n. 93  New.
Attachment, 6 C. J., sec. 351, p. 196, n. 78  New.
Sales, 35 Cyc., p. 327, n. 6.
Sheriffs and Constables, 35 Cyc., p. 1787, n. 28  New.
Trover and Conversion, 38 Cyc., p. 2005, n. 1; p. 2011, n. 27; p. 2020,
n. 1.

   1.  What constitute conditional sales, see notes in 46 Am. St. Rep.
295; 94 Am. St. Rep. 234.  See, also, 24 R. C. L. 444.
   3.  See 26 R. C. L. 1120.
   4.  See 26 R. C. L. 1113.

*Appeal from District Court, Yellowstone County; Robert C. Stong, Judge.*

ACTION by E. O. Englehart against Russel Sage, as Sheriff of Yellowstone County. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. William B. Waldo,* for Appellant, submitted a brief and argued the cause orally.

The interest of a conditional vendor is one which may be levied upon. (*Escobar* v. *Rogers,* 182 Cal. 603, 189 Pac. 268; *McMillan* v. *Larned,* 41 Mich. 521, 2 N. W. 662.)

The text-books seem to indicate clearly that trover does not lie except for the conversion of specific tangible property. (38 Cyc. 2011, 12, 15; 26 R. C. L. 1101, 1102; 1 Chitty on Pleading, p. 169; *Salem L. & T. Co.* v. *Anson,* 41 Or. 562, 69 Pac. 675, 677.)

The third-party claim statute has no application to a case where chattels are not taken or given into the possession of the attaching officer, or, in the case of a debt, paid to him, and the remedy of a third party who makes claim to the property or fund levied on is by intervention in the attachment suit, unless there is an interpleader by the garnishee which brings him in to establish his claim, or by action against the garnishee. (*Maier* v. *Freeman,* 112 Cal. 8, 53 Am. St. Rep. 151, 44 Pac. 357; *McFadden* v. *O'Donnell,* 18 Cal. 160, 164; *Glugermovich* v. *Zicovich,* 113 Cal. 64, 45 Pac. 174.)

*Mr. William V. Beers,* for Respondent, submitted a brief and argued the cause orally.

Respondent submits that the sheriff having converted the money in the manner alleged and proved, he is entitled to maintain his action against appellant as he did, and recover judgment for the sum due him as was done. (*Wetzel* v. *Power,*

[73 Mont. 139.]

5 Mont. 214, 217, 2 Pac. 338; *Potter* v. *Lohse*, 31 Mont. 91, 94, 77 Pac. 419; *Glass* v. *Basin & Bay State Min. Co.*, 31 Mont. 21, 77 Pac. 302; *Moore* v. *Crittenden*, 62 Mont. 309, 312, 204 Pac. 1035; *Lacey* v. *Great Northern Ry. Co.*, 70 Mont. 346, 225 Pac. 808, 810; *Aldrich* v. *Hodges*, 164 Mass. 570, 42 N. E. 107; *Harrington* v. *King*, 121 Mass. 269; *Morrin* v. *Manning*, 205 Mass. 205, 91 N. E. 308; *Moody* v. *Keener*, 7 Port. (Ala.) 218; *Davis* v. *Funk*, 39 Pa. St. 243, 80 Am. Dec. 519; *Stone* v. *Clough*, 41 N. H. 290; *Otisfield* v. *Mayberry*, 63 Me. 197; *Gordon* v. *Hosetter*, 37 N. Y. 99; *Hornefius* v. *Wilkinson*, 51 Or. 45, 93 Pac. 474.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On September 12, 1923, Hugh Tanaka entered into a contract in writing to sell to E. O. Englehart an Owens bean separator, and possession of the property was thereupon delivered to Englehart, but by the terms of the contract the title remained in Tanaka until the purchase price should be paid in full. During the fall Englehart employed the separator to thresh beans for ranchers in Yellowstone county, the last work being done for Makino and Nakimura on the Bair ranch, for which they owed $450 or thereabouts. When this work was completed, Englehart left the separator at the Bair ranch, apparently in charge of Makino and Nakimura. D. W. MacKay commenced an action against Tanaka and caused a writ of attachment to be issued and placed in the hands of the sheriff for service. On December 4 the sheriff delivered a copy of the writ to Makino and Nakimura, together with a notice that any debt due from them to Tanaka and other property in their possession belonging to Tanaka were attached. On the same day Makino and Nakimura made return to the sheriff that they were indebted to Tanaka in the sum of $432 and that they had in their possession the separator belonging to Tanaka. When Englehart demanded payment of the threshing bill,

Makino and Nakimura informed him that the debt had been attached, and when he made a third party claim to the sheriff that he owned and was entitled to the separator and the money due from Makino and Nakimura, MacKay furnished an indemnity bond pursuant to the provisions of section 9273, Revised Codes, and the sheriff refused to release the property to him. Englehart then instituted this action against the sheriff to recover damages for the alleged conversion of the property, and prevailed in the lower court. The defendant has appealed from the judgment.

The two questions presented are: (1) Had the title to the separator passed from Tanaka to Englehart before the writ of attachment was levied on December 4; and (2) was there a conversion of the property by the sheriff?

1. The contract did not evidence a sale of the separator to [1] Englehart. It was only an executory agreement to sell (*State ex rel. Malin-Yates Co.* v. *Justice of the Peace Court,* 51 Mont. 133, 149 Pac. 709), and title remained in Tanaka until the purchase price was paid (*Bennett Bros. Co.* v. *Fitchett,* 24 Mont. 457, 62 Pac. 780). Whether payment was made exactly as the sale contract provided is not a matter of any concern to the sheriff or MacKay. If in fact the purchase price were paid before December 4, title to the separator passed to Englehart, and the property was not subject to attachment in the action against Tanaka.

Defendant has failed to have the transcript printed as [2] required by subdivision 1, Rule VI, of the Rules of this court, and is not entitled to have the evidence considered; nevertheless we have reviewed it, but no useful purpose would be served in setting forth even a brief summary. The evidence is in sharp conflict and not as satisfactory as it might be, but the jury found that Englehart was the owner of the separator and the debt due from Makino and Nakimura at the time the writ of attachment was levied, and we think the evidence sufficient to justify the finding.

2. In making the levy the sheriff proceeded upon the [3] assumption that the separator was in the actual possession of Makino and Nakimura, and for the purposes of this appeal we accept that theory as correct. Our statute makes no distinction between property actually seized by the sheriff under a writ of attachment and property attached by service of a copy of the writ upon and notice to the person in possession. The two methods of making the levy are different, but the result is the same—the property is attached, and is conserved for final execution after the action has proceeded to judgment.

Section 9276, Revised Codes, provides: "If judgment be recovered by plaintiff [in the attachment action], the sheriff must satisfy the same out of the property attached by him," *etc.* (*Moreland* v. *Monarch Mining Co.,* 55 Mont. 419, 178 Pac. 175.)

It is settled in this jurisdiction, and elsewhere generally, that the attachment of one person's property to satisfy a claim against another is a conversion of the property (*Western Mining Supply Co.* v. *Quinn,* 40 Mont. 156, 8 L. R. A. (n. s.) 214, 105 Pac. 732; 26 R. C. L. 1120), and it is altogether immaterial that the sheriff did not take actual possession of the separator in this instance. In *Interstate National Bank* v. *McCormick,* 67 Mont. 80, 214 Pac. 955, this court said: "Any distinct act [4] of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it, is a conversion. 'The action of trover being founded upon a conjoint right of property and possession, any act of the defendant which negatives or is inconsistent with such rights amounts, in law, to a conversion. It is not necessary to a conversion that there should be a manual taking of the thing in question by the defendant; it is not necessary to be shown that he has applied it to his own use. Does he exercise a dominion over it in exclusion or in defiance of the plaintiff's right? If he does, that is, in law, a conversion, be it for his own or another person's use.' "

But it is urged earnestly that there was not a conversion of the
[5]    debt due from Makino and Nakimura, and decided cases
are cited which seem to sustain the contention, but they follow.
the ancient rule of the common law, and are opposed to the
great weight of modern authority. In 26 R. C. L. 1099, it is
said: "At common law, trover lay only for tangible property,
capable of being identified and taken into actual possession,
but the fiction on which the action of trover was founded,
namely, that a defendant had found the property of another,
which was lost, has become, in the progress of law, an unmean-
ing thing, which has been discarded by most courts; so that
the action no longer exists as it did at common law, but has
been developed into a remedy for the conversion of every
species of personal property." (See, also, *Payne* v. *Elliot,* 54
Cal. 339, 35 Am. Rep. 80; *Ayres* v. *French,* 41 Conn. 151.)

Section 9256, Revised Codes, provides that the plaintiff may
have the property of the defendant attached "as security for
the satisfaction of any judgment that may be recovered."

Section 9260 provides that the writ shall be directed to the
sheriff and shall require him "to attach and safely keep all
the property of such defendant within his county not exempt
from execution," *etc.*

Section 9261 provides: "The rights or shares which the de-
fendant may have in the stock of any corporation or company,
together with the interest and profits thereon, and all debts
due such defendant, and all other property in this state of such
defendant not exempt from execution, may be attached, and if
judgment be recovered, be sold to satisfy the judgment and
execution."

Section 9262 provides the different methods for making the
levy, and subdivision 5 thereof reads as follows: "Debts or
credits and personal property, not capable of manual delivery,
and personal property in the possession of a third person, must
be attached by leaving with the person owing such debt, or
having in his possession or under his control such credits and

personal property, or with his agent, a copy of the writ, and a notice that the debts owing by him to the defendant, or the credits and other personal property in his possession, or under his control, belonging to the defendant, are attached in pursuance of such writ.''

It must be accepted, then, that the debt due from Makino and Nakimura was ''property'' within the meaning of our attachment statute, and that it was attached by the sheriff in the action by MacKay against Tanaka. If the money had been paid over to the sheriff, as it might have been (sec. 9267), there could not be any question that the detention of Englehart's money to satisfy a claim against Tanaka would have constituted a conversion. The result, however, so far as Englehart was concerned, was the same. Makino and Nakimura were liable to MacKay for the amount of the debt if it were in fact due to Tanaka (sec. 9267), and they could not pay it over to Englehart with safety until the question of its ownership was determined. While they might have paid it over to the sheriff as indicated above, or they might have interpleaded and paid it into court, in neither event would Englehart have been benefited. It was the act of the sheriff in levying upon the debt which operated to impound it and in effect to place it in the custody of the law and beyond the control of its owner. (*Hagan* v. *Lucas,* 10 Pet. 400, 9 L. Ed. 470 [see, also, Rose's U. S. Notes]; *Taylor* v. *Carryl,* 20 How. 583, 15 L. Ed. 1028 [see, also, 5 Rose's U. S. Notes, 98].) In *Lamman* v. *Feusier,* 111 U. S. 17, 28 L. Ed. 337, 4 Sup. Ct. Rep. 286, the court said: ''When a marshal, upon a writ of attachment on mesne process, takes property of a person not named in the writ, the property is in his official custody, and under the control of the court whose officer he is, and whose writ he is executing.'' We are unable to perceive any distinction, so far as Englehart is concerned, between what was done in this instance and what would have been done if Makino and Nakimura had paid the

money to the sheriff immediately upon notice to them that the debt was attached.

The fact that Englehart might have pursued other remedies [6] does not impair his right to maintain this action. In *Moreland* v. *Monarch Mining Co.*, above, we said: "While it is true that the seizure, or even the sale, of A.'s property for B.'s debt does not affect the title of the true owner who may proceed under section 6673, Revised Codes [section 9273, Rev. Codes 1921], or have his appropriate remedy in conversion or replevin, he is not required to pursue any of these courses, and the fact that he has an alternative remedy does not reflect upon his right to intervene." The converse is equally true: The fact that he might have intervened in the *Mackay* v. *Tanaka* action is no reason for denying to him the right to prosecute this action for damages for conversion. Indeed, the very provision of section 9273 under which MacKay gave to the sheriff an indemnity bond presupposes that the sheriff may be liable to the third party claimant for damages for retaining the property.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.

Rehearing denied April 25, 1925.