Illinois Minerals Company et al., Appellants, v. Catherine M. McCarty, Executrix of Will of William E. McCarty, Deceased, Appellee, and Olive Branch Minerals Company, Defendant.

424

Opinion filed March 2, 1943. Rehearing denied April 14, 1943.

LANSDEN & LANSDEN, of Cairo, for appellants.

FORDYCE, WHITE, MAYNE, WILLIAMS & HARTMAN, of St. Louis, Mo., and ASA J. WILBOURN, of Cairo, for appellee.

MR. JUSTICE BRISTOW delivered the opinion of the court.

This is an appeal from part of an order of the circuit court abating the second, third and fourth counts of a complaint. The question involved is

whether the cause of action alleged in either of these counts of the complaint, was one which survived under the Illinois Survival Statute.

The allegations contained in all of these counts are substantially as follows: In June 1933, Joe Webb was mill foreman at Elco, Illinois, for International Silica Company which was engaged in the business of producing, mining, milling and selling silica. At a great expense and by the diligence of its agents and officers, by widespread circularization of manufacturers, a profitable clientele was accomplished throughout the United States and Canada. One of the principal assets of the company was the record of this clientele. This record contained not only the names and addresses, but also the grade, price, and quantities of silica purchased by each. This record and list of customers was always kept secret, and was a valuable asset and property right. Its employees, including said Joe Webb who had access to its records, were instructed to keep said information confidential so that same could not come into the hands of its competitors.

On January 29, 1934, International Silica Company transferred its business, good will and said information and list of customers to the plaintiff, Illinois Minerals Company, and the following month Illinois Minerals Company entered into an agreement with the plaintiff, Ozark Minerals Company in regard to operating its said mine at Elco.

Joe Webb continued as mine foreman for the plaintiffs, Illinois Minerals Company and Ozark Minerals Company. He surreptitiously and unknown to plaintiffs and in violation of express instructions which had been given him by them, copied and made a list of the names of said customers and of sales, amounts and grades of silica purchased by such customers, from plaintiffs.

Plaintiff, Aud M. Davis, is president of Illinois Minerals Company and owner of all but two of its shares of stock and is an officer and large shareholder of plaintiff, Ozark Minerals Company. Defendant, Olive Branch Minerals Company is a competing company, engaged in the same business, in the same county. The original defendant, William E. McCarty was president of the defendant, Olive Branch Minerals Company and the owner of almost all of its stock, and had the control of its management.

On June 15, 1934, Joe Webb ceased to be mill foreman for plaintiffs and took with him said list of customers and information regarding the sales, amounts and grades of silica, though he knew it was the property of his employers and knew that the taking of the list with him constituted a violation of the trust and confidence which his former employers previously placed in him.

That thereafter said William E. McCarty learned that said Joe Webb had in his possession the list which he compiled as mill foreman for plaintiffs and said McCarty, Olive Branch Minerals Company and said Webb, knowing said list contained confidential information of great value to plaintiffs and that it would be of great value and source of profit to McCarty and Olive Branch Minerals Company, since Olive Branch Minerals Company was a new company in its field, that said list by use would immediately place it in a position it could not have reached without several years of solicitation of potential customers and expenditures of large sums of money; that McCarty, Olive Branch Minerals Company and Webb, with such knowledge, thereupon entered into a conspiracy whereby in concert they would by illegal, wilful, malicious, wrongful means by the use of said list which had been so illegally acquired, embark upon a ruthless plan to undermine and ruin the business of

plaintiffs; that after said three had so entered into said conspiracy, Olive Branch Minerals Company employed said Joe Webb as its mill foreman; that in furtherance of said conspiracy defendants, McCarty and Olive Branch Minerals Company, with the assistance of said Joe Webb, solicited the persons named on said list of customers which had been so illegally obtained and quoted prices to such persons for silica and related products which, in many instances, were less than cost of production and are continuing carrying on the conspiracy which began with the illegal, malicious, wanton and wilful acquisition of said list; that defendants fraudulently concealed the above facts and that plaintiffs did not have knowledge that Webb had compiled said list, or defendants with Webb had entered into said conspiracy, until after September 15, 1935; that as a result of said acts in furtherance of said conspiracy, plaintiffs have suffered and will suffer great damages.

Count III further alleged that Webb when ceasing to be mill foreman for plaintiffs, took with him and converted to his own use said list and information in violation of the trust and confidence of his former employers; that thereafter Webb sold said list to McCarty who knew same belonged to plaintiffs and that thereupon McCarty converted said list to his own use and the use of defendant Olive Branch Minerals Company.

Court IV further alleged that after Webb had so ceased to be mill foreman and had taken such list and information with him, that McCarty learned that Webb had same and induced Webb to sell same to McCarty which he did.

Later by amendment where throughout each count acts were characterized as "illegal, wilful, malicious, wanton and wrongful" the word "fraudulent" or "fraudulently" was inserted and statement was inserted that Webb stood in fiduciary relationship

with his employer, and that his business was one of great trust and confidence and that he violated such duty.

McCarty died after the suit was instituted and his personal representative was substituted as defendant, in his stead and said amendments were made.

August 30, 1941, McCarty's former attorney and attorney for defendants, filed a motion as *amicus curiae* to suggest his death and abate the suit which was granted. Leave was granted to file a motion that McCarty had died and that suit be abated. October 4, 1941 the court entered an order that the parties came and that plaintiffs moved to vacate said order of August 30 because no notice was served on plaintiffs. The court then ordered that plaintiffs' motion to vacate said order dated August 30 be overruled, and further ordered that said motion of the *amicus curiae* to suggest the death and abate the suit "be and the same hereby is overruled."

December 4, plaintiffs filed their motion to substitute the personal representative and suggested the death of William E. McCarty. December 5, the court entered an order that the executrix is made defendant instead of McCarty; that copy of order be served on executrix in 20 days and that plaintiffs are granted leave to amend complaint in 20 days. Said amendments to the complaint were filed December 22, 1941.

January 7, 1942, the executrix by limited appearance in her own proper person appeared and made a motion supported by affidavit, to show the court was wholly without jurisdiction of her person or to take further proceedings for the reason the action abated against McCarty at his death and was not an action which survived. January 9 the court entered an order that the parties came by their attorneys and by consent of parties, motion of the personal representative was withdrawn and she was given leave to plead in ten days.

January 10, 1942, the personal representative, by her attorneys, filed her motion to abate and dismiss the suit against her for the reason the action under the laws of Illinois, did not survive against the personal representative of McCarty.

March 28, 1942, the court entered an order reciting the parties came by their attorneys, that the matter had been under advisement, that the motion to abate as to Count I was overruled, and sustained as to Counts II, III, and IV of plaintiffs' complaint as amended.

The theory expressed in Count III is conversion of personal property. Appellee contends that conversion or trover could not lie for such copied list of names and information; that conversion and trover only lie for specific tangible personal chattels or such as tangible evidence of title to intangible or real property. Appellants contend that it will lie and asserts that the paper on which the list was written was tangible property. However, we do not find in the record any allegation that the names were copied on paper belonging to appellants. Appellants assert that the cause of action was not changed by the addition of the words "fraudulent" and "fraudulently." We believe appellee's contention is sound. *Dewitz v. Shoeneman*, 82 Ill. App. 378, 379; *Kerwin v. Balhatchett*, 147 Ill. App. 561, 566.

Other jurisdictions have held that the appropriation of knowledge such as architectual ideas, betrayal of trade secrets and routes, are not subjects of conversion. Such cases cited are *Olschewski v. Hudson*, 87 Cal. App. 282, 262 Pac. 43; *Mackay v. Benjamin Franklin Realty & Holding Co.*, 288 Pa. 207, 135 Atl. 613 and *Roystone v. John H. Woodbury Dermatological Institute*, 122 N. Y. Supp. 444, 67 Misc. 265; *Professional Service Corp. v. Johnson*, 316 Ill. App. 431.

The complaint charged conversion of a list of names and information, copied, but not of any paper

of plaintiffs on which such names and information was written. Appellants rely on *Olds v. Chicago Open Board of Trade*, 33 Ill. App. 445; *Barth v. Union Nat. Bank*, 67 Ill. App. 131; *Lewis v. Bidwell Elec. Co.*, 141 Ill. App. 33; *Hayes v. Massachusetts Mut. Life Ins. Co.*, 125 Ill. 626, and *Genslinger v. New Illinois Athletic Club of Chicago*, 229 Ill. App. 428. In these cases cited, the subject under consideration was conversion of evidences of title; as certificate of membership of Board of Trade, certificate of corporate stock, of an insurance policy, and membership in a club.

In *Hayes v. Massachusetts Mut. Life Ins. Co.* the Supreme Court said at page 633; "and trover will lie for the wrongful conversion of valuable papers, or evidences of title to real or personal property, for checks, promissory notes, bank bills, bonds, bills of exchange, drafts, certificates of stock in incorporated companies, securities of any kind, books of account, vouchers, etc."

We believe the ruling of the trial court as to Count III, should be affirmed.

We do not believe that appellee waived her right to raise the question of abatement. Plea in abatement has been held to be the proper method of raising the effect of the death of a party, plaintiff or defendant, *Stoetzell v. Fullerton*, 44 Ill. 108. It is not a plea to the merits. *Bacon v. Schepflin*, 185 Ill. 122. In *Life Ass'n of America v. Fassett*, 102 Ill. 315, 328 it was held, that, until the personal representative of a deceased defendant had been brought into court, he was not supposed to be present or to know anything about the pendancy of the suit. The law fixes a certain order for pleading. If the personal representative appears and then fails to plead in abatement, but files some other plea on the merits, he waives right of abatement, *Mitchell v. King*, 187 Ill. 452, 460–461.

We do not believe the suggestion and motion filed by one of the defendants' attorneys as *amicus curiae* prevented the personal representative from making appearance and filing plea in abatement.

The Civil Practice Act, Ill. Rev. Stat., ch. 110, sec. 54 [Jones Ill. Stats. Ann. 104.054] provides for the method of bringing the personal representative into the proceedings. We think the procedure was proper in this case.

Appellee contends that appellants have waived their rights to object to the plea in abatement, because appellants did not make their motion to strike the plea. But we do not agree with that contention and do not believe the authorities cited, support it. Appellee cites *King v. Haines,* 23 Ill. 340 and *Shertoli v. Clark,* 263 Ill. App. 65. In the latter case it was contended that the affidavit supporting the plea was on belief. The court said that to have remedied defects in the form of the plea or to make objection to the affidavit available, plaintiff should have moved the court to strike it, before filing a replication. In this *Shertoli* case the defendant filed his special appearance, demanded a trial by jury and later made a special demand for jury trial, filed motion to quash the service and writ which was denied, was then given leave to and did file his plea in abatement. Such cases do not support such contention of appellee.

Since no objection was made to the form of the plea in abatement in the case under consideration, such point of appellee is not well taken.

Appellant contends that only one motion in abatement may be filed and cites authorities, *Bacon v. Schepflin,* 185 Ill. 122, 130. That case holds that when the defendant had filed a plea in abatement and the court has disposed of it, it is irregular to file another and it may be stricken. In the instant case no motion to strike was filed. The court did not dispose of the motion or plea dated January 9. The order was

that it was withdrawn by the parties. Appellant relies upon *Grand Lodge Brotherhood of Railroad Trainmen v. Randolph,* 186 Ill. 89, 90. In that case the court held, in effect, that where a first plea was not verified and while pending, a second one verified was filed without leave of court, the second was properly stricken on motion. Such authorities, we believe, do not support the point advanced.

The order of court on January 9, states the personal representative is given leave to plead within ten days. The record does not show that the personal representative asks for leave to plead. She had the right to plead abatement without leave. The following day the plea in abatement, which is referred to by appellant as plea in abatement or motion in abatement was filed by the executrix. We do not believe the authorities cited by appellant support the contention that appellee abandoned her right to file the motion on January 10, 1942 to abate the suit as to herself, nor that she failed to file her motion or plea at the first opportunity. She was not bound to plead at all until she was in position to be compelled to plead. *Shepard v. Ogden,* 2 Scammon, pages 257, 261.

There remains for consideration, the question whether Counts II and IV survive under the statute. Ill. Rev. Stat. 1941, ch. 3, sec. 494 [Jones Ill. Stats. Ann. 110.591] is relied upon by both parties. This statute recites that "in addition to the actions which survive by the common law, the following also survive: actions of replevin, . . . and actions for fraud or deceit."

The parties assert and deny that assignability is the test of survivability. We are not favored with any direct authority that the cause of action as alleged in the complaint is one that is or is not assignable. However, assignability is a test of survivability, but not the sole test. *North Chicago St. R. Co. v. Ackley,* 171 Ill. 100; *Wilcox v. Bierd,* 330 Ill. 571, 585.

While under the common law most personal actions were held to abate, statutes have been passed in Illinois, from time to time, so that most causes of action now survive, including all actions for fraud or deceit. *Warner v. Flack,* 278 Ill. 303, 307.

The former statute recited survival of "and all actions for fraud or deceit." The present statute reads "and actions for fraud or deceit." We do not think the change of wording enlarges or limits the actions which survive. If the legislature had intended to limit survivability only, of the ancient action designated by common-law pleading as fraud and deceit, it would have said actions for "fraud and deceit," and we do not think that it would have specifically used the words, "fraud or deceit." In framing the recent administration statute, where the unnecessary word "all," was eliminated, the legislature would also have changed the word "or" to "and," had it intended a limitation, as appellee contends, to survival only of the old common-law action of fraud and deceit.

The cause of action alleged in the complaint is not one of those of such strictly personal nature that it is held to abate. It is well recognized that use of the word "fraudulently" in a pleading is merely the statement of a legal conclusion and that general allegations of fraud are insufficient.

The allegations alleged in the second and fourth counts, abundantly charge fraud and conspiracy in consummating fraud, on the part of the original defendants. *Eliason v. Wilborn,* 335 Ill. 352, 357, 358. The author in 23 Am. Jur., pages 753, 754, at length, recites many instances constituting fraud and damage. resulting from fraudulent acts.

Acts which may constitute fraud extend to every possible case in which a fiduciary relationship exists. It may be moral, social or business. The rule embraces those informal relations which exists when one man trusts and relies upon another. The relationship

of principal and agent is a familiar instance in which the principal of fiduciary relationship applies, in the strictest sense. Fraud may be based on false representation. It may be based on concealment; on fraudulent devices; on a wilful, malevolent act directed to perpetrate a wrong to the rights of others; unlawful appropriation of another's property by design, or conduct that operates fraudulently on the rights of others, and is so intended. In short, it comprises all acts, of omissions and concealments, including breach of legal or equitable duty, trust or confidence, resulting in injury to another. Deceit is a species of fraud. Sometimes the words are used interchangeably. Deceit is actual fraud and consists of any false representation or contrivance, where one person overreaches another.

In equity on action based on fraud or conspiracy involving fraud survives irrespective of the survival statute. *Geiger v. Merle,* 360 Ill. 497. One who adopts and ratifies another's fraudulent act, becomes liable therefor even though he was not a coconspirator. 23 Am. Jur., page 1008. Acts committed by another or for his own advantage approved by another after it has been committed, renders such other liable as if he himself had performed the fraudulent act. *Aaron v. Dausch,* 313 Ill. App. 524, 530.

Appellee has cited several cases supporting her contention in substance that the complaint fails to allege: wilful representation of a material, past-existing fact, known to be false; that same were relied upon by plaintiffs, without knowledge of the falsity, to their damage. Such cases cited are based upon fraud and deceit and false representation by representations made which were false. The theory of the complaint is not based upon representation of existing facts made by defendants but upon fraudulent acts and conspiracy.

Argument and cases cited by appellee that a promise of future action is not a fraudulent representation

of a past existing fact; that statement of a fact must be known to be false and be relied upon by another to his injury are not authorities or argument denying survivability of an action of fraud as alleged in the complaint.

The court erred in entering its judgment and order abating the cause of action in the second and fourth counts. The court was correct in entering its judgment and order abating the cause of action in the third count. The judgment of the court is affirmed as to the third count and is reversed and remanded as to the second and fourth counts with directions to overrule and deny the plea of abatement to the second and fourth counts.

*Affirmed in part and reversed and remanded with directions.*