## No. 15,607.

PEPPER ET AL. *v.* HYMAN.
(189 P. [2d] 155)

Decided October 20, 1947.   Rehearing denied January 26, 1948.

Messrs. QUIAT & GINSBERG, for plaintiffs in error.

Mr. EDWARD MILLER, Mr. GRAHAM SUSMAN, for defendant in error.

MR. JUSTICE LUXFORD delivered the opinion of the court.

THIS is an accounting suit. The parties appear in the same order as in the court below.

In 1928 plaintiffs and defendant orally entered into a joint venture agreement to buy, feed and sell cattle, the profit to be divided equally, one-half to plaintiffs and one-half to defendant; losses, if any to be shared in the same proportion. Under the agreement, Joe Pepper, one of the plaintiffs, was to borrow money, buy the cattle and deliver them to defendant, at cost, to be fed in a feed lot near Fort Lupton, Colorado. Both parties were

to give their services to the joint venture without financial remuneration. Joe Pepper was to advance money to buy and feed cattle while they were in the feed lot, and when the cattle were sold, he was to be repaid the amount borrowed with interest; however, the money advanced by him to buy feed for the cattle was to be repaid to him without interest. It also was agreed that Joe Pepper was to pay defendant two hundred dollars per year for the use of his automobile in attending to the business of the joint venture. Defendant was to devote his entire time to feeding the cattle. Later the parties bought a farm which was used in their cattle feeding business. The greater part of this farm, however, was cultivated and operated by defendant as a part of the joint-venture business on the basis that each member was to receive one-half the profits and bear one-half of the losses resulting from the said farming business. Ultimately a dispute arose over the business, and in 1944 plaintiffs sued defendant for a final accounting, a dissolution of the joint venture, and for a balance which they alleged to be due them in the sum of $13,008.56. Defendant's answer contained a general denial; an allegation that plaintiffs owed him $50,000.00; a demand for an accounting; and a request for the appointment of a master to determine the accounts between them. The court appointed a master who took the testimony, made a written report of his findings of fact and conclusions of law with a recommended judgment, which, with a transcript of the entire proceedings, was returned to the court. Upon said report and record the court entered judgment for defendant and against plaintiffs in the sum of $9,176.60; plaintiffs bring the case here on error specifying 21 specific points, nine of which they discuss in their brief, and which we follow in considering and disposing of the case.

1. To constitute what is known as "an account stated" there must have been an accounting between the

parties, a balance struck, and a promise, express or implied, to pay the balance.

It is contended that an alleged settlement in 1931 between the parties hereto constituted "an account stated." The evidence discloses that Peyser Pepper called defendant to his office on December 7, 1931, and told him that the firm had lost $25,000, and asked him to give his promissory note for one-half that amount. Defendant signed a note in blank which was thereafter filled out by Peyser Pepper for the sum of $12,579.20 with interest at six per cent. The note was payable on demand. Neither the account books, if there were any, nor any statement of account, were presented to defendant. The entire transaction was consummated upon the verbal statement made by Peyser Pepper to defendant. At the time of trial the books covering the period had been destroyed by plaintiffs.

It also is disclosed by the record that the alleged settlement did not cover or take into consideration the number and value of the cattle then in the feed lot, the value of the feed on hand, or the income from the farm. Defendant could neither read nor write English. He testified: "We never settled anything; we made no settlement. Q. Did he show you any statement or paper at that time? A. No, sir. I take his word because, I have been believing that fellow like a fellow believed in God." The master in his report to the court stated: "The fact is, and the master finds, that Hyman was imposed upon. * * * Whatever the motive he [Peyser Pepper] took advantage of the confidence reposed in him, knowing, or at least believing, that Hyman would respond favorably to any request made by Peyser Pepper." The master found from all the evidence that the giving of the promissory note by Hyman for the sum of $12,579.20 dated December 7, 1931, under the circumstances shown was not the result of an "account stated" between the parties, and is not itself proof of an account stated. In view of the foregoing we concur in his conclusion.

2. The 1935 settlement. It is claimed by plaintiffs that the parties entered into another settlement on September 13, 1935, and that defendant should not now be permitted to inquire about any items of account that arose prior to that time. The settlement of 1931 did not constitute an account stated. It is evident that the parties never had a settlement in 1935 because the adjustment consisted of nothing more than a determination of the balance due on the old note after allowing defendant credit for the profit that accrued in the interim. Peyser Pepper admitted that this account did not include all the items of the joint-adventure business. The proceeds from the farm crops had not been received and, it is admitted, were not considered in the settlement. This is only one of the items which should have been, but which were not, included therein. It is evident that there was no accounting between the parties, no balance struck, but simply a credit given defendant on his old note of his share of the profit which plaintiffs told defendant had been made. For the most part it was simply a repetition of all the circumstances surrounding the 1931 settlement, in view of which, it did not constitute "an account stated."

3. Fraud. Where, upon the facts, the law adjudges fraud, it is not essential that the answer should, in terms, allege it. In his answer defendant alleged that as a result of their "feeding operations" a profit of $100,000 resulted, and that his share of said profit was $50,000, which plaintiffs converted to their own use. The master found that plaintiffs had imposed upon defendant, and that they owed him $9,119.34. With slight modification, the court entered judgment on said findings. To the extent of the judgment entered, the evidence supported the allegations of the answer. True, "fraud" was not specifically charged in the answer, nor did it need to be. This is a case where "the law adjudges fraud" from all the circumstances in the case. *Stimson v. Helps,* 9 Colo. 33, 36, 10 Pac. 290,

370

■ 4. Omitted items. It is contended that the court erred in admitting and considering evidence showing items omitted from the alleged settlements made in 1931 and 1935 between plaintiffs and defendant. But as we have shown, the omission of these items from those settlements absolutely precluded them from being considered as "an account stated." These items not having been considered before in any accounting between the parties, the master was right in admitting evidence concerning them.

■ 5. Laches. It is claimed that defendant was guilty of laches. The adjudicated cases, however, proceed on the assumption that the party to whom laches is imputed has knowledge of his rights. *Penn Mutual Life Insurance Co. v. City of Austin,* 168 U.S. 685, 698, 18 Sup. Ct. 223, 42 L. Ed. 626. The undisputed evidence herein shows that defendant's delay was due to lack of information, and that as soon as he discovered the facts he proceeded promptly to assert his rights. It must be considered also that the period establishing laches is not "one which can be measured out in days and months, as though it were a statute of limitations." *Northern Pac. R.R. Co. v. Boyd,* 228 U.S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931. Defendant was not guilty of laches.

■ 6. Statute of Limitations. It is urged that defendant is precluded from making claim for an accounting of the joint-adventure business prior to September, 1935 by reason of his plea of the statute of limitations on the note of September 13, 1935. This contention is not sound. In defendant's case the statute of limitations began to run from the time of discovery of the concealment of the facts. *Order of Railway Conductors v. Jones,* 78 Colo. 80, 239 Pac. 882. Action on a promissory note is barred after the lapse of six years from its maturity, *Engel v. Samuels,* 9 Colo. App. 339, 48 Pac. 276; and on an account stated, when unquestioned, the statute of limitations begins to run from the date of the account. *Lendholm v. Bailey,* 16 Colo. App. 190, 64 Pac. 586. In

the case at bar the accounting was disputed, defendant acted promptly when the facts appeared, and his defense was not barred by the statute of limitations.

7. Freight Charges. It is contended that the master erred in disallowing the plaintiff's freight expense in the sum of $730.00 on the shipment of Krouse cattle. We are of the opinion, after considering the whole record relating to said transaction, that the contention of plaintiff in error is correct and that one-half of the $730.00 freight charges, or $365.00, should be deducted from the amount of plaintiff's judgment.

8. Interest. The trial court found and held that "defendant is entitled to interest at six per cent per annum on the amount found to be due defendant from the date of the demand on plaintiffs by defendant up to the date of the approval of the Master's Report." In view of the circumstances presented in the case and the provisions of section 2, chapter 88, '35 C.S.A., regarding interest, we are of the opinion that the trial court was justified in so holding.

9. Costs. The court costs in the sum of $2,041.45 were paid out of the funds of the joint adventure that came into the registry of the court, and thereafter, the court included one-half thereof, to wit, $1,020.72 in the judgment in favor of the defendant and against plaintiffs. We think the court was right in so ordering.

The judgment is affirmed.

MR. CHIEF JUSTICE BURKE and MR. JUSTICE JACKSON concur.

*On Petition for Rehearing.*

MR. JUSTICE LUXFORD.

Although after considering the petition for rehearing in this case we have altered the language used in our opinion in some minor respects, we adhere to our original determination. The petition for rehearing is denied.