FIRST NATIONAL BANK OF CEREDO, *etc.*

*v.*

ROBERT GEORGE LINN, *et al.*

(No. 14565)

Decided September 8, 1981.

*Baer, Napier & Colburn and James Allan Colburn,* for appellants.

*Harry F. Thompson, Jr.,* for appellees.

MILLER, JUSTICE:

This appeal involves the application of certain principles set out in our Uniform Commercial Code to determine whether the appellees, Messrs. Linn and Thompson, were indorsers under W. Va. Code, 46-3-414 or guarantors under W. Va. Code, 46-3-416. The resolution of appellees' standing

determines their liability on a note since the appellant, First National Bank of Ceredo (Bank), failed to give them notice of dishonor after the primary obligor did not pay on the note. The requirement of notice of dishonor is necessary to affix liability on an indorser but is not required for guarantors of an instrument. The trial court, without a jury, concluded appellees were not liable and we agree.

The commercial transaction giving rise to this litigation had its origin in August of 1972, when Karl T. and Linda Estep purchased a trailer from P & S Trailer Sales, Inc. (P & S Trailer). They financed a considerable part of the transaction by executing a document entitled "Contract, Note, Security Agreement and Disclosures" in which they agreed to pay the balance due P & S Trailer in monthly installments. P & S Trailer desired to obtain cash for the unpaid balance due on the note and discounted the same to the Bank. The Bank did not desire to rely solely on the financial integrity of the Esteps, who had made the note, and required P & S Trailer to sign the note on the reverse side, with recourse. In addition, the principals of P & S Trailer were also required to sign the note.[1] The recourse language, together with the parties' signatures, appeared on the note as follows:

"WITH RECOURSE

"Seller guarantees payment of the amount due on said contract as and when the same shall become due, waiving any extension of time made by LENDER and agrees to repurchase said contract at any time upon demand after any default by Buyer. Seller waives notice of acceptance of this guaranty and notices of nonpayment and nonperformance.

"P & S Trailer Sales, Inc.
    "Seller

"By /s/ George Linn
    "Its President

---

[1] It appears from the record that Linn and Thompson had been asked by the Bank to sign sometime after P & S Trailer had assigned the note to the Bank.

"/s/ George Linn
"/s/ Harry f. Thompson, Jr."

Subsequently, the trailer buyers, the Esteps, defaulted on their monthly payments to the Bank. The seller of the trailer, P & S Trailer, went out of business. The Bank repossessed the trailer under the security agreement and sold it. When the sale did not generate sufficient funds to pay off the balance due on the note, it made claim against Messrs. Linn and Thompson for the deficiency due.[2]

The Bank relies heavily on the language of the "With Recourse" guaranty and the fact that Linn and Thompson signed after the corporation under this language. There is no dispute that the language in the "With Recourse" paragraph is that of a guaranty since it specifically provides: "Seller guarantees payment of the amount due" and "Seller waives notice of acceptance of this guaranty and notices of nonpayment and nonperformance." The contract of a guarantor is contained in W. Va. Code, 46-3-416.[3]

Despite the acknowledgement that the language in the "With Recourse" paragraph is that of guaranty, we do no believe that Linn and Thompson became guarantors for two reasons, First, the language in the guaranty paragraph speaks solely of the "Seller." The Seller is clearly

---

[2] The parties do not raise, and consequently we do not address, the question of whether the disposition of the collateral without prior notice would relieve Linn and Thompson from liability even if they were guarantors. *Barnett v. Bank of Jacksonville*, 345 So.2d 804 (Fla. 1977); *Commercial Discount Corp. v. Bayer*, 57 Ill. App.3d 295, 372 N.E.2d 926 (1978); *Bank of Gering v. Glover*, 192 Neb. 575, 223 N.W.2d 56 (1974); *T & W Ice Cream, Inc. v. Terwilleger*, 107 N.J. Super. 328, 258 A.2d 162 (1969); *Chase Manhattan Bank v. Natarelli*, 93 Misc.2d 78, 401 N.Y.S.2d 404 (1977); *Mutual Finance Co. v. Politzer*, 21 Ohio St.2d 177, 256 N.E.2d 606 (1970); 4 R. Anderson, *Uniform Commercial Code* §9-504:18 (2d ed. 1971); Clark, *Suretyship in the Uniform Commercial Code*, 46 Tex. L. Rev. 453 (1968).

[3] The material portion of W. Va. Code, 46-3-416, entitled "contract of guarantor" provides:

"(1) 'Payment guaranteed' or equivalent words added to a signature mean that the signer engages that if the instrument is not paid when due he will pay it according to its tenor without resort by the holder to any other party."

identified in other portions of the document as P & S Trailer, and, of course, from a factual standpoint, it was the seller of the trailer. In this respect, the present case is distinguished from our earlier case of *Central National Bank of Portsmouth v. Sciotoville Milling Co.*, 79 W. Va. 782, 91 S.E. 808 (1917), where several persons endorsed the back of a note beneath the following printed language:

> "The within note is hereby indorsed and demand, notice of nonpayment and protest waived."

We concluded that this was a general waiver which applied to all parties who had signed under the waiver form. Here, the guaranty language which contained the waiver of nonpayment and nonperformance was by its terms limited to the seller.

A second factor involved in this case is what is known as the presumption of indorsement arising from W. Va. Code, 46-3-402:

> "Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement."

We recognized this section in *People's Bank of Point Pleasant v. Pied Piper Retreat, Inc.*, 158 W. Va. 170, 209 S.E.2d 573, 579 (1974). Other courts have held under a similar statute that where a signature on a note does not clearly show it is made in some other capacity, it will be deemed to be an indorsement. *E.g., New Haven National Bank v. Clarke*, 33 Conn. Supp. 179, 368 A.2d 613 (1976); *Lange v. Shapiro*, 68 Ill. App.2d 433, 216 N.E.2d 294 (1966); *King v. Finnell*, 603 P.2d 754 (Okla. 1979).

This is not to say that reference may not be made to the instrument itself to determine the capacity in which a party has signed an instrument. In the official comment[4]

---

[4] The official comment to our Code provisions involving the Uniform Commercial Code are taken verbatim from the Official Comments contained in the original Uniform Commercial Code and represent textual statements of the drafters of the Code and are recognized by courts and commentators as an official source document for interpretation of the Code provisions. *E.g., United States v.*

to W. Va. Code, 46-3-402, these statements are made:

> "The question is to be determined from the face of the instrument alone, and unless the instrument itself makes it clear that he has signed in some other capacity the signer must be treated as an indorser.

\* \* \* \* \* \* \*

> "Thus by long established practice judicially noticed or otherwise established a signature in the lower right hand corner of an instrument indicates an intent to sign as the maker of a note or the drawer of a draft. Any similar clear indication of an intent to sign in some other capacity may be enough to remove the signature from the application of this section."

In the present case, it is clear that the Esteps, as buyers of the trailer with an unpaid balance due on the purchase price, were the makers of the note. The payee of the note was P & S Trailer. Linn and Thompson's signatures do not appear on the face of the note but follow the "With Recourse" signature of P & S Trailer, which corporate signature followed the corporate guaranty made at the time P & S Trailer transferred the note to the Bank. We have previously pointed out that the guaranty language was narrowly drawn to encompass only the Seller, P & S Trailer. Consequently, in view of the limited language in the guaranty provision, we cannot say under the previously quoted comments to W. Va. Code, 46-3-402, that there is a clear indication that Linn and Thompson signed as guarantors. As a result, under this statute, they are deemed indorsers.

Having determined that Linn and Thompson were indorsers, their obligation is determined by W. Va. Code, 46-3-414 (1):

---

*First National Bank*, 470 F.2d 944, 947 (8th Cir. 1973); *In re Varney Woods Prods. Inc.*, 458 F.2d 435, 437 (4th Cir. 1972); *Thompson v. United States*, 408 F.2d 1075, 1084 (8th Cir. 1969).

"Unless the indorsement otherwise specifies (as by such words as 'without recourse')[5] every indorserengages that upon dishonor and any necessary notice of dishonor and protest[6] he will pay the instrument according to its tenor at the time of his indorsement to the holder or to any subsequent indorser who takes it up, even though the indorser who takes it up was not obligated to do so."

Once Linn and Thompson's status is established as indorsers, it is clear from W. Va. Code, 46-3-414 (1), that upon dishonor they were required to be given the necessary notice of dishonor. Our prior cases which dealt with the liability of indorsers under our former Negotiable Instru-

---

[5] The term "without recourse" is the traditional language used by an indorser specifically declining to assume responsibility for payment. In the Official Comment to W. Va. Code, 46-3-414, this statement is made:

"An indorser may disclaim his liability on the contract of indorsement, but only if the indorsement itself so specifies. Since the disclaimer varies the written contract of indorsement, the disclaimer itself must be written on the instrument and cannot be proved by parol. The customary manner of disclaiming the indorser's liability under this section is to indorse 'without recourse'."

[6] W. Va. Code, 46-3-501, specifically provides when presentment, notice of dishonor and protest are necessary and W. Va. Code, 46-3-501(1)(a) and 2(a) require presentment and notice of dishonor before an indorser may be charged.

The terms "presentment," "notice of dishonor" and "protest" have precise meanings under the UCC. Under W. Va. Code, 46-3-504(1), "[p]resentment is a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder." Under W. Va. Code, 46-3-507(1), "[a]n instrument is dishonored when (a) a necessary or optional presentment is duly made and due acceptance or payment is refused or cannot be obtained within the prescribed time. . . ." The requirements for a properly executed "notice of dishonor" are contained in W. Va. Code, 46-3-508. "Protest" is defined in W. Va. Code, 46-3-509, and relates only to a manner of certifying the dishonor of a "draft which on its face appears to be drawn or payable outside of the States and territories of the United States." W. Va. Code, 46-3-501(3). Consequently, in the ordinary domestic commercial transaction, evidence need only be shown of "presentment" and "notice of dishonor."

ment Law[7] established that notice of dishonor and nonpayment must be given to indorsers in order to hold them liable. *Kelly v. Ford*, 115 W. Va. 435, 176 S.E. 705 (1934); *Morrison v. Frantz*, 105 W. Va. 14, 141 S.E. 394 (1928). This holding is the general rule elsewhere under similar UCC provisions. *Nevada State Bank v. Fischer*, 93 Nev. 317, 565 P.2d 332 (1977); *Central Jersey Bank & Trust Company v. Lady Van Industries, Inc.*, 154 N.J. Super. 459, 381 A.2d 831 (1977), *rev'd on other grounds, Ligran Inc. v. Medlawtel Inc.*, 174 N.J. Super 597, 417 A.2d 100 (1980); *Chandler Motors, Inc. v. Dunham*, 127 N.J. Super. 320, 317 A.2d 386 (1974); *Bankers Trust of South Carolina v. Culbertson*, 268 S.C. 564, 235 S.E.2d 130 (1977).

From a purely technical standpoint, Linn and Thompson were accommodation indorsers by virtue of W. Va. Code, 46-3-415 (4), relating to the contract of an accommodation party which states: "An indorsement which shows that it is not in the chain of title is notice of its accommodation character." We recognized this provision in *People's Bank of Point Pleasant, supra. See Gavin v. Hinrichs*, 375 So.2d 1063 (Ala. 1979). Here, Linn and Thompson were neither makers nor payees of the note; therefore, their signatures were not necessary to transfer title of the note to the Bank. Thus, they were not in the chain of title to the note and are accommodation indorsers.

W. Va. Code, 46-3-415, sets out the contract of an accommodation party.[8] The official comment under this section

---

[7] Our Negotiable Instrument Law, W. Va. Code, 46-7-1 *et seq.* [1931], was repealed when our Uniform Commercial Code was enacted and, in particular, W. Va. Code, 46-3-101 *et seq.*, relating to Commercial Paper. Many of the provisions of the two acts are substantially similar.

[8] W. Va. Code, 46-3-415, provides:

"(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

"(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

"(3) As against a holder in due course and without notice of the accommodation oral proof of the accommodation is not admissible

makes it clear that in order to determine the exact nature of the liability of an accommodation party, it is first necessary to determine the capacity in which he signed the instrument since there can be accommodation makers, guarantors, indorsers, etc:

> "His obligation is therefore determined by the capacity in which he signs. An accommodation maker or acceptor is bound on the instrument without any resort to his principal, while an accommodation indorser may be liable only after presentment, notice of dishonor and protest."

Here, we have made the initial determination that Linn and Thompson signed as indorsers. Their status as accommodation indorsers does not change their obligation as indorsers and, as we have previously discussed, an indorser is not liable unless there is presentment, notice of dishonor and protest. Had the Bank upon the default in the monthly payments by the makers, the Esteps, given notice to Linn and Thompson of the default and made demand for their payment, the result in this case would have been different. With such notice of default and demand for payment, Linn and Thompson could have then proceeded to make the monthly payments instead of being confronted, as here, at a later time with the entire deficiency balance due. One of the reasons for requiring such notification to a party secondarily liable, such as an indorser, is to enable him to assume the payments rather than be held accountable for the entire unpaid obligation. The contract of an indorser is that he "engages that upon dishonor and any necessary notice of dishonor ... he will pay the instrument *according to its tenor*." W. Va. Code, 46-3-414 (Emphasis added)

to give the accommodation party the benefit of discharges dependent on his character as such. In other cases the accommodation character may be shown by oral proof.

"(4) An indorsement which shows that it is not in the chain of title is notice of its accommodation character.

"(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

The trial court was correct in holding Linn and Thompson not liable since no notice of dishonor was given them and its judgment is, therefore, affirmed.

*Affirmed.*