332 S.E.2d 589

**GREER LIMESTONE CO.**

v.

**Billy G. NESTOR, etc.**

No. 16197.

Supreme Court of Appeals of
West Virginia.

June 27, 1985.

**291**

Samuel Spencer Stone, Morgantown, for appellant.

Alfred J. Lemley, Furbee, Amos, Webb & Critchfield, Fairmont, for appellee.

MILLER, Justice:

This case presents the question of whether an action filed on August 13, 1981, to recover the remaining balance on an account is barred by the statute of limitations where the last credit charge on the account occurred on September 15, 1974, and where the debtor periodically made payments on the account, with the last payment being made in May of 1980.

The Circuit Court of Marion County concluded that the statute of limitations did not bar the action filed by the Greer Limestone Company against Billy Nestor, the appellant-debtor. Judgment in the amount of $5,888.39 was entered against Mr. Nestor. Implicit in the court's holding was that the debtor had made partial payments on the account, thereby tolling the statute of limitations.

Before addressing the statute of limitations issue, we will first determine what type of account existed between Greer Limestone and Mr. Nestor because the type of account involved affects the application of the statute of limitations. We have defined the term "account" to be "a claim or demand by one person against another creating a debtor-creditor relation." *State v. Stout,* 142 W.Va. 182, 187, 95 S.E.2d 639, 642, 59 A.L.R.2d 1154, 1158 (1956). *See also Coleman v. Kansas City,* 353 Mo. 150, 182 S.W.2d 74 (1944) (en banc); *Cooley v. Roman,* 286 Or. 807, 596 P.2d 565 (1979); *Call of Houston, Inc. v. Mulvey,* 343 S.W.2d 522 (Tex.Civ.App. 1961); 1 Am.Jur.2d *Accounts and Accounting* § 1 (1962); 1 C.J.S. *Account* at 571–73 (1936). An account kept in a ledger book where debit and credit entries are recorded is denominated as a "book ac-

count." An "open account" is one that has not been settled by payment or has not become a stated account. *Plunkett-Jarrell Grocery Co. v. Terry,* 222 Ark. 784, 263 S.W.2d 229, 44 A.L.R.2d 917 (1953); *Southern Union Exploration Co. v. Wynn Exploration Co.,* 95 N.M. 594, 624 P.2d 536 (App.), *cert. denied,* 95 N.M. 593, 624 P.2d 535 (1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1276, 71 L.Ed. 2d 461 (1982); *Whitson v. Wetherbee Elec. Co.,* 416 P.2d 888 (Okla. 1966); 1 Am. Jur.2d *Accounts and Accounting* § 4 (1962); 1 C.J.S. *Account* at 574–75 (1936). For purposes of the statute of limitations, there is no difference in this jurisdiction between an open and book account because these terms deal only with the formalized nature of the account as kept by the creditor.

■ An account can become an "account stated," as we defined in Syllabus Point 2 of *Hoover-Dimeling Lumber Co. v. Neill,* 77 W. Va. 470, 87 S.E. 855 (1916):

> "Generally, where persons who have had previous transactions of a monetary character agree that the account representing the transactions and the balance shown are correct, and the debtor expressly or impliedly promises to pay such balance, the account thereby becomes an account stated."

*See also Monte Produce, Inc. v. Delgado,* 126 Ariz. 320, 614 P.2d 862 (1980); *Motive Parts Co. of America, Inc. v. Robinson,* 53 Ill.App.3d 935, 11 Ill.Dec. 665, 369 N.E.2d 119 (1977); *Glick v. Seufert Constr. & Supply Co.,* 168 Ind.App. 354, 342 N.E.2d 874 (1976); *Cooley v. Roman, supra; Mello v. Coy Real Estate Co.,* 103 R.I. 74, 234 A.2d 667 (1967); 1 Am.Jur.2d *Accounts and Accounting* § 21 (1962); 1 C.J.S. *Account Stated* § 1 (1936).

■ A more complex area is where there is a "running account" or a "mutual running account." A running account is one in which there has been a series of credit charges made or contemplated without any particular time limitation. *Mullan Contracting Co. v. International Business Machines Corp.,* 220 Md. 248, 151 A.2d 906 (1959); *Meyers v. Barrett & Zimmerman, Inc.,* 196 Minn. 276, 264 N.W. 769 (1936); *A.E. Birk & Son Plumbing & Heating, Inc. v. Malan Constr. Co.,* 548 S.W.2d 611 (Mo.App.1977); *Whitley's Elec. Serv., Inc. v. Sherrod,* 293 N.C. 498, 238 S.E.2d 607 (1977); 1 Am.Jur.2d *Accounts and Accounting* § 4 (1962); 1 C.J.S. *Account* at 575 (1936). A mutual running account is one where the parties deal with each other in the sense that each extends credit to the other. In this situation, each party occupies both a debtor and creditor relationship with regard to the other party. *E.P. Hinkel & Co. v. Washington Carpet Corp.,* 212 A.2d 328 (D.C.App.1965); *Vanguard Ins. Agency & Real Estate Co. v. Walker,* 157 Ga.App. 838, 278 S.E.2d 723 (1981); *Whitley's Elec. Serv., Inc. v. Sherrod, supra; Van de Wiele v. Koch,* 256 Or. 349, 472 P.2d 803 (1970); *In Re Estate of Vicen,* 1 Wis.2d 193, 83 N.W.2d 664 (1957); 1 Am.Jur.2d *Accounts and Accounting* § 5 (1962). Most familiarly, a mutual account may exist between merchants who trade with each other.[1]

■ With regard to an account, whether an open, book, or running account, the general rule is that the statute of limitations ordinarily begins to run on the date that each credit charge is made in the absence of some express agreement between the parties.[2] *See Weadon v. First National Bank & Trust Co.,* 129 Conn. 541, 29 A.2d 779 (1943); *Erenfeld v. Erenfeld,* 196

---

1. Our general statute of limitations, W.Va.Code, 55-2-6, specifically recognizes this type of account and provides that an /"action may be brought until the expiration of five years from a cessation of the dealings in which they are interested together, but not after." *See Teter v. Moore,* 80 W.Va. 443, 93 S.E. 342 (1917). This same rule applies to partnership accounts. W.Va.Code, 55-2-6; *Teter v. Moore, supra.*

2. Obviously, the parties may by express agreement postpone payment on the account, which would delay the commencement of the running of the statute of limitations or impose other conditions on the account. When such an express agreement is shown, it will alter the general rules relative to accounts. *E.g., Himelfarb v. American Express Co.,* 301 Md. 698, 484 A.2d 1013 (1984); *Van de Wiele v. Koch, supra;* 1 Am.Jur.2d *Accounts and Accounting* § 10 (1962).

N.W.2d 406 (N.D.1972); *Pitts v. Walker*, 188 Okla. 17, 105 P.2d 760 (1940); 1 Am. Jur.2d *Accounts and Accounting* § 15 (1962). This rule is predicated on the general principle that the statute of limitations begins to run when a cause of action accrues. Syllabus Point 3, *Steeley v. Funkhouser*, 153 W. Va. 423, 169 S.E.2d 701 (1969); Syllabus, *Sansom v. Sansom*, 148 W. Va. 603, 137 S.E.2d 1 (1964).

 Where, however, the account is a mutual account, that is, each party has had credit transactions with the other, the statute of limitations does not begin to run until the date of the last transaction between the parties. *See Teter v. Moore, supra; Sheldon Grain & Feed Co. v. Schuetz*, 207 Kan. 108, 483 P.2d 1033 (1971); *Poeske v. Estreen*, 55 Wis. 2d 238, 198 N.W.2d 625 (1972); 1 Am.Jur.2d *Accounts and Accounting* § 16 (1962). In the case of an account stated, the statute of limitations runs from the date it was stated. *Boatner v. Gates Brothers Lumber Co.*, 224 Ark. 494, 275 S.W.2d 627, 51 A.L.R.2d 326 (1955); *Pepper v. Hyman*, 117 Colo. 365, 189 P.2d 155 (1948); *Frucht v. Garcia*, 44 Misc.2d 52, 252 N.Y.S.2d 825 (1964); *Hansen v. Fettig*, 179 N.W.2d 739, 45 A.L.R.3d 435 (N.D.1970); 1 Am.Jur.2d *Accounts and Accounting* § 38 (1962); 1 C.J.S. *Accounts Stated* § 61 (1936).

It should be stressed that these general principles may be subject to specific statutes in other jurisdictions such as we have for partnership accounts and accounts between merchants. W.Va.Code, 55–2–6.

 The appellant also raises the question of whether the five-year statute of limitations under W. Va. Code, 55–2–6, applies, as stated in *Barnes v. Lilly*, 110 W. Va. 643, 159 S.E. 873 (1931), or the four-year limitation as contained in the Uniform Commercial Code (UCC), W.Va. Code, 46–2–725.[3] We have not had occasion to decide this issue since the effective date of the UCC which was July 1, 1964. W. Va. Code, 46–10–101. It is generally held that the statute of limitations contained in the UCC, which is in W. Va.Code, 46–2–725, supercedes any general statute of limitations with regard to transactions involving the sale of goods. *See, e.g., County of Milwaukee v. Northrop Data Systems, Inc.*, 602 F.2d 767 (7th Cir.1979) (applying Wisconsin law); *Cleveland Lumber Co. v. Proctor & Schwartz, Inc.*, 397 F.Supp. 1088 (N.D.Ga.1975) (applying Georgia law); *Hachten v. Stewart*, 42 Cal.App.3d Supp. 1, 116 Cal.Rptr. 631 (1974); *Burton v. Artery Co.*, 279 Md. 94, 367 A.2d 935 (1977); *Hughes v. Collegedale Distributors*, 355 So.2d 79 (Miss.1978); *Payne v. Far-Mar-Co.*, 612 S.W.2d 54 (Mo.App.1981); *Reiss v. Pacific Steel Pool Corp.*, 73 Misc.2d 78, 341 N.Y.S.2d 364 (1973); *May Co. v. Trusnik*, 54 Ohio App.2d 71, 375 N.E.2d 72, 8 Ohio Op.3d 97 (1977); *Sesow v. Swearingen*, 552 P.2d 705 (Okla.1976); *Ideal Builders Hardware Co. v. Cross Constr. Co.*, 491 S.W.2d 228 (Tex.Civ.App.1972); 5 R. Anderson, Uniform Commercial Code § 2–725:30 (1984). The reason given for applying the UCC statute of limitations is contained in the official commentary to the UCC which we adopted as a part of our

**3.** W.Va.Code, 46–2–725, provides:

"(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

"(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

"(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this chapter becomes effective [July 1, 1964]."

**294**

Code. We said in note 4 of *First National Bank of Ceredo v. Linn*, 168 W.Va. 76, 79, 282 S.E.2d 52, 54 (1981), that the official commentary to the UCC is "recognized by courts and commentators as an official source document for interpretation of the Code provisions." (Citations omitted). We must assume that the legislature was aware of this commentary when it adopted W. Va. Code, 46–2–725:

> "*Purposes:* To introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred. This Article takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four year period as the most appropriate to modern business practice."

We, therefore, conclude that the four-year UCC statute of limitations is applicable.[4]

■■■The account at issue in the present case was an open account. It was not a running account because the creditor in 1974 had refused to extend further credit. From the record, it does not appear that it was an account stated because there was no testimony that the parties ever agreed on the actual balance of the account. The distinction between the different types of accounts has little significance in the present case because the statute of limita-

tions began running in 1974 and suit was not filed until 1981. Unless the debtor's partial payments tolled the statute, the suit would be barred.

The debtor argues that any extension of the statute of limitations by the doctrine of partial payment is foreclosed by Syllabus Point 1 of *In Re Estate of Kneeream*, 120 W. Va. 147, 196 S.E. 362 (1938), where we held that: "Under Code, 55–2–8, part payment of a debt does not affect the running of the statute of limitations thereon." The reasoning of the Court in *Kneeream* was based on an analysis of W. Va. Code, 55–2–8, relating to extending the statute of limitations by a new promise to pay, which must be in writing.[5] The Court traced the origins of this statute through Virginia and into the English law. It concluded that the statute's alteration by the Virginia legislature and our adoption of the altered statute meant that partial payment on a debt did not toll the statute of limitations.

■■■*Kneeream* is too broad in its stark pronouncement that partial payment on a debt will not toll the statute of limitations. It is clear that a partial payment accompanied by a writing sufficient to meet the requirements of W. Va. Code, 55–2–8, would begin the running of the statute of limitations again. The fact that only a partial payment was made would not vitiate the written acknowledgment that accompanied it. Recently in *Weirton Ice & Coal Co. v. Weirton Shopping Plaza, Inc.*, 175 W.Va. 473, 334 S.E.2d 611 (1985), we stated in Syllabus Point 4:

> ise as it might originally have been maintained within upon the award or contract, and the plaintiff may either sue on such a promise, or on the original cause of action, and in the latter case, in answer to a plea under the sixth section [§ 55–2–6], may, by way of replication, state such promise, and that such action was brought within such number of years thereafter; but no promise, except by writing as aforesaid, shall take any case out of the operation of the said sixth section, or deprive any party of the benefit thereof. An acknowledgment in writing as aforesaid, from which a promise of payment may be implied, shall be deemed to be such promise within the meaning of this section."

---

**4.** We note that the four-year provision under W.Va.Code, 46–2–725, applies only to the sale of goods as defined in W.Va.Code, 46–2–105. Where the account owed is for services rendered, it is not applicable. *Shead v. Grissett*, 566 S.W.2d 318 (Tex.Civ.App.1978); 5 R. Anderson, *supra*, § 2–725:31.

**5.** W.Va.Code, 55–2–8, provides:
"If any person against whom the right shall have so accrued on an award, or on any such contract, shall by writing signed by him or his agent promise payment of money on such award or contract, the person to whom the right shall have so accrued may maintain an action or suit for the moneys so promised within such number of years after such prom-

"A notation on a debtor's check acknowledging the existence of the debt can constitute a sufficient writing to extend the statute of limitations under W. Va. Code, 55–2–8."

In *Weirton Ice*, we did not deal with the concept of partial payment because we found that the checks and the notations on them were sufficient to constitute a new acknowledgment under W. Va. Code, 55–2–8. Admittedly, the line between when a check with notations on it or accompanied by another writing is sufficient to constitute a new acknowledgment of a debt under W. Va. Code, 55–2–8, is imprecise. However, much of this imprecision disappears if the creditor can, as in most jurisdictions, utilize the check along with other extrinsic evidence to bring the case within the doctrine of partial payment and start the statute of limitations running anew.

Furthermore, under W. Va. Code, 46–2–725(4), which states that this section "does not alter the law on tolling of the statute of limitations,"[6] it can be argued that the restrictive interpretation on partial payments made by the Court in *Kneeream* under W. Va. Code, 55–2–8, is no longer applicable.

Finally, it is difficult to discover a rational basis for *Kneeream's* harsh rule on refusing to acknowledge the doctrine of partial payment. A reading of W.Va.Code, 55–2–8, produces the facial conclusion that it deals only with a promise to pay a debt or an acknowledgment of the debt from which a promise to pay may be implied. It does not refer to the concept of partial payment. Indeed, it was only by reference to the original English statute known as Lord Tenterden's Act, 9 George IV, ch. 14, that the Court in *Kneeream* noted the absence of a proviso excluding partial payments in W. Va. Code, 55–2–8, as having any significance.

There is some similarity between a written promise to pay and the doctrine of partial payment, since the latter gives rise to an implied acknowledgment of a debt. Yet, it is clear that statutes, such as W. Va. Code, 55–2–8, patterned after Lord Tenterden's Act, were designed to preclude oral promises to pay, which could be easily asserted, and required that they be in writing. The ambiguities and conflicts arising from oral promises, however, are not present when a partial payment on a debt is made.

 The debtor's action in making a partial payment on his debt in the absence of some contrary statement on his part, must impliedly be taken as an acknowledgment of the debt.[7] We conclude that the abolishment of oral promises to pay under W. Va. Code, 55–2–8, cannot be read to mean that the statute was also directed at excluding the doctrine of partial payment.

The practical consequences of the failure to recognize the doctrine of partial payment is to force the creditor to bring suit against his debtor who is making partial payments if the account approaches the statute of limitations bar. We think neither party is served by such a rule.

The rule in most jurisdictions is that partial payment on a debt may start the statute of limitations running anew where the payment is made voluntarily by a debtor[8] under circumstances that warrant a clear inference that the debtor recognizes the whole debt to be subsisting and demonstrates his willingness or obligation to pay the balance of the debt. *See Zapolsky v. Sacks,* 191 Conn. 194, 464 A.2d 30 (1983); *Himelfarb v. American Express Co.,* 301 Md. 698, 484 A.2d 1013 (1984); *Castellano v. Bitkower,* 216 Neb. 806, 346 N.W.2d 249 (1984); *T.S. McShane Co. v. Dominion Constr. Co.* 203 Neb. 318, 278 N.W.2d 596 (1979); *Lew Morris Demolition Co. v.*

**6.** For the full text of W.Va.Code, 46–2–725, *see* note 3, *supra.*

**7.** In 1 H. Woods, Limitations of Actions 518 (4th ed. 1916), the following rationale for the doctrine of partial payment is given: "'A promise,' observes Tindal, C.J., 'is frequently made rashly, and is always liable to misconstruction; whereas a payment is not supposed to be made unad-

visedly. A person may part with his words rashly, not so with his money.'" (Footnote omitted).

**8.** Thus, payment under compulsion of legal process is not voluntary. 51 Am.Jur.2d *Limitation of Actions* § 367 (1970).

*Board of Education,* 40 N.Y.2d 516, 355 N.E.2d 369, 387 N.Y.S.2d 409, 10 A.L.R.4th 925 (1976); *Randustrial Corp. v. Acme Distribution Center,* 79 A.D.2d 862, 434 N.Y.S.2d 511 (1980); *Whitley's Elec. Serv., Inc. v. Sherrod, supra; Harvey v. Frizzell,* 203 Okla. 424, 222 P.2d 752 (1950); *Graves v. Sawyer,* 588 S.W.2d 542 (Tenn.1979); J. Angell, Limitations of Actions at Law §§ 240–47 (6th ed. 1876); H. Buswell, The Statute of Limitations and Adverse Possession §§ 77–87 (1889); 1A A. Corbin, Corbin on Contracts § 217 (1963); 18 S. Williston, Law of Contracts §§ 2061–65 (3d ed. 1978); 1 H. Wood, Limitation of Actions §§ 96–116i (4th ed. 1916); 51 Am.Jur.2d *Limitation of Actions* §§ 360–90 (1970); 54 C.J.S. *Limitations of Actions* §§ 321–39 (1948); Restatement (Second) of Contracts § 82 (1981); Annot., 45 A.L.R.2d 967 (1956).

▇▇▇ As a corollary, if a debtor restricts or qualifies his partial payment in some manner which indicates an intention not to pay the balance of the debt, then the statute of limitations will not be tolled. *See Samuel Bingham's Sons Mfg. Co. v. Metropolis Publishing Co.,* 119 Fla. 333, 161 So. 426 (1935); *Lew Morris Demolition Co. v. Board of Education, supra;* Annot., 10 A.L.R.4th 932 (1981). Finally, the burden of proof rests on the creditor to demonstrate that the statute of limitations has been renewed by partial payment. *See McNeill v. Rowland,* 198 Ark. 1094, 132 S.W.2d 370 (1939); *Rowley v. Cosens,* 125 Kan. 431, 264 P. 1036 (1928); *McPhilomy v. Lister,* 341 Pa. 250, 19 A.2d 143, 142 A.L.R. 385 (1941); 51 Am.Jur.2d *Limitation of Actions* § 369 (1970); Annot., 142 A.L.R. 389 (1943).

We believe that the doctrine of partial payment is supported by the overwhelming weight of authority in this country and more accurately reflects commercial realities and, therefore, to the extent that *Kneeream* expresses a different principle, it is overruled.

▇▇▇ In the present case, the issue was tried before the court without a jury. The court found that partial payments had been made on the account by the debtor. The trial testimony and exhibits not only bear this out, but demonstrate that the requisites for the doctrine of partial payment had been met. The testimony was undisputed that after the debtor had incurred a series of charges for goods received from May to September of 1974 and had failed to make any payments, a suit was instituted against him. The suit was dismissed in the spring of 1975 after the debtor agreed to pay off the account and partial payments were made by check by the debtor commencing in June of 1975 and continuing to May of 1980.

The debtor's checks were introduced as an exhibit and carried a notation "on acc." in some instances or "Acc No 20–065–380," which was the debtor's account number at Greer Limestone. There was no evidence that the debtor ever disputed the account debt. We believe the trial court sitting as a jury could find a clear inference that the payments were a recognition by the debtor of his acknowledgment of the debt and met the requisites of the doctrine of partial payment.

Therefore, we affirm the judgment of the Circuit Court of Marion County.

Affirmed.