**In re The MAXIMA CORPORATION f/d/b/a MAXIMA COMPUTER SYSTEMS CORPORATION,**

**Janet M. Meiburger, Plan Trustee Appellant,**

v.

**World Computer Systems, Appellee.**

**No. CIV.A. AW–02–CV–203.**

United States District Court, D. Maryland, Southern Division.

May 3, 2002.

in favor of the involuntarily removed plain- tiffs.

Janet M. Meiburger, McLean, VA, pro se.

Kathleen A. Carey, Jordan Keys and Jessamy LLP, Washington, DC, for appellee.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

This is an appeal from a summary judgment order entered by the Bankruptcy Court in favor of Appellee, World Computer Systems ("World Computer"). *See Meiburger v. World Computer (In Re Maxima Corporation),* No. 98–1850–PM, Adv. No. 98–1366–PM (Bankr.D.Md. September 24, 2001). Appellant, Janet M. Meiburger, a trustee in bankruptcy for Maxima Corporation ("Maxima"), appeals the judgment, asserting that the Bankruptcy Court erred in its finding that Maryland's three-year statute of limitation for breach of contract had expired. The issues have been fully briefed by all parties. On April 9, 2002, the Court heard oral argument. Finding the Bankruptcy Court's judgment correct, this Court affirms.

## I. *BACKGROUND*

In the mid 1980s, World Computer signed a contract with the federal government to provide computer support. In 1986 and 1987, World Computer subcontracted with Maxima to provide technical assistance on the contract. The subcon-

tract with Maxima was a "cost plus fixed fee" contract, meaning that Maxima was entitled to payment for the costs it incurred while performing the contracts, as well as a fixed fee for its services. Under this type of contract, indirect costs were to be billed initially based on estimated or "provisional" rates, and "final" rates were to be billed after government approval. World Computer contractually agreed to pay according to this system. The parties agreed that Maryland law applied, and that Appellee would pay each "approved" invoice within thirty days.

Maxima completed its work pursuant to the subcontracts in 1988. Soon thereafter, Maxima submitted invoices with provisional rates to World Computer. World Computer paid those invoices. Maxima's records show that it was not until October 18, 1993, and January 4, 1994, that Maxima sent the final rates, approved by the federal government, to World Computer, along with notice that the payments were due within thirty days. World Computer did not acknowledge receipt of these invoices, nor did it pay these invoices. Maxima's records also show that on October 24, 1994, and November 28, 1995, Maxima sent duplicate originals of the final invoices to World Computer. Again, World Computer did not pay the invoices. After November 1995, Maxima made many phone calls to World Computer to collect the debt, all without success.

On June 26, 1998, Maxima filed for Chapter 11 protection in United States Bankruptcy Court for the District of Maryland, Southern Division. On August 27, 1999, World Computer closed-out its contract with the federal government and released the government of further liability under the contract. On October 8, 1999, the President of Maxima contacted a representative of World Computer regarding the outstanding invoices. The representative stated that he was aware of the final invoices. On June 1, 2000, the Court appointed Appellant trustee for Maxima. On June 23, 2000, Maxima filed its complaint for breach of contract against World Computer, asserting that payment for $27,369.01 was due for the work completed under the subcontracts.

After limited discovery, World Computer moved for summary judgment, arguing that the statute of limitations for this action had expired. In response, Appellant argued that the contract language and custom between the parties tolled the statute of limitations, and that the limitations period had not expired before the filing of bankruptcy on June 26, 1998.[1] Additionally, Appellant argued that World Computer had to first "approve" and acknowledge receipt of the invoices before the statute of limitations began to accrue. In Appellant's view, the earliest possible date of accrual was November 28, 1995. The parties agreed to postpone further discovery, pending the outcome of Appellee's motion.

On September 24, 2001, the bankruptcy court granted summary judgment and dismissed the adversary proceeding. *In re Maxima Corporation*, at 15. Chief Judge Paul Mannes of the bankruptcy court found that no dispute of fact existed re-

---

1. 11 U.S.C. § 108, provides, in part:
   **Extension of time**
   (a) If applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
   (1) the end of such period, including any suspension of such period occurring on or
   after the commencement of the case; or
   (2) two years after the order for relief.

garding whether Maxima sent the invoices on October 18, 1993, and January 4, 1994. *Id.* at 2. Judge Mannes also found that Appellant's assertion that Maxima waived the thirty-day grace period had nothing to do with the accrual of the statute of limitations period. *Id.* at 14. Judge Mannes further found that the final invoices were "approved" pursuant to the subcontracts, because the invoices reflected billing rates that the federal government had audited and approved. *Id.* at 12–13. Accordingly, the bankruptcy court held that the three-year statute of limitations began to run as of November 17, 1993, and February 3, 1994, and had expired before Maxima filed for bankruptcy. *Id.* at 15. Judge Mannes denied Appellant's Motion for Reconsideration, and Appellant timely appealed.

In her appeal, Appellant asserts that the bankruptcy court "prematurely acted as the trier of fact," making factual finding without support in the record. Beyond the arguments raised in bankruptcy court, Appellant contends that the bankruptcy court should have permitted it to complete discovery before ruling on the motion to dismiss. Appellee asserts that the judgment of the bankruptcy court is correct.

Viewing the facts in the light most favorable to Appellant, this Court affirms the summary judgment order.

## II. *APPLICABLE LAW*

### A. *Jurisdiction and Standard of Review*

█ While this breach of contract action is not the core proceeding, the parties consented to entry of final judgment pursuant to 28 U.S.C. § 157(c)(2). The Court's subject matter jurisdiction is appropriate under 28 U.S.C. § 158, which authorizes a district court to act as an appellate tribunal for final orders of the bankruptcy court. *See Canal Corp. v. Finnman (In re Johnson),* 960 F.2d 396,

399 (4th Cir.1992). Where the district court sits as an appellate tribunal, it reviews the bankruptcy court's factual findings for clear error, and its conclusions of law *de novo. Kielisch v. Educ. Credit Mgmt. Corp.,* 258 F.3d 315, 319 (4th Cir. 2001); *Amer. Bankers Ins. Co. v. Maness,* 101 F.3d 358, 362 (4th Cir.1996).

### B. *Summary Judgment*

In reviewing a motion for summary judgment, the court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine,* 501 U.S. 496, 520, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) (citations omitted). Rule 56(c) of the Federal Rules of Civil Procedure provides that the entry of summary judgment is proper, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cray Communications, Inc. v. Novatel Computer Systems, Inc.,* 33 F.3d 390, 393 (4th Cir. 1994); *see LeBlanc v. Cahill,* 153 F.3d 134 (4th Cir.1998).

### C. *Statute of Limitations*

█ The Fourth Circuit in *Gould v. U.S. Dept. of Health & Human Serv.,* 905 F.2d 738 (4th Cir.1990) observed:

[T]he right to be free of stale claims in time comes to prevail over the right to prosecute them.... [S]tatutes of limitation give defendants and courts a degree of protection from having to confront controversies in which the search for truth may be thwarted by the loss of evidence, whether by the death or disap-

pearance of witnesses, fading memories, loss of physical evidence, or the like.

*Id* at 741. (internal quotations and citations omitted). Similarly, the Court of Appeals of Maryland in *Harig v. Johns–Manville Prod. Corp.*, 284 Md. 70, 394 A.2d 299 (1978), described the most important consideration in establishing statute of limitations.

The chief consideration is fairness to the defendant providing assurance that no ancient obligations remain, and relieving him of defending against a claim after evidence has been lost, memories have faded, and witnesses have disappeared.

*Id.* at 302. (internal quotation and citation omitted).

Section 5–101 of Maryland's Courts and Judicial Proceedings Article provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md. Code Ann. (1973, 1998 Repl.Vol.) § 5–101, Cts. & Jud. Proc. Art. The parties do not dispute that the three-year statute of limitations applies. Instead they dispute the date of accrual.

■ The Court must decide the date of accrual, based upon the facts and circumstances of the case and the purpose of the statute of limitations. *Goldstein v. Potomac Electric Power Co.*, 285 Md. 673, 404 A.2d 1064, 1069 (1979); *Frederick Rd., Ltd. v. Brown & Sturm*, 360 Md. 76, 756 A.2d 963 (2000). In *Frederick Rd. Ltd.*, the Court of Appeals of Maryland explained:

[T]he question of accrual in § 5–101 is left to judicial determination. This determination may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied. *Id.* at 973. (citations omitted).

■ In Maryland, the general rule in breach of contract cases is that the action begins to accrue on the date of the alleged breach. *Himelfarb v. Amer. Express Co.*, 301 Md. 698, 484 A.2d 1013, 1015 (1984). However, the harshness of this general rule led to the State's adoption of the "discovery rule." *See Harig, supra*, 394 A.2d at 303–304 (discussing the adoption of the discovery rule in Maryland); *Jones v. Hyatt Insur. Agency, Inc.*, 356 Md. 639, 741 A.2d 1099, 1105 (1999) (application of discovery rule in breach of contract action); *see also Bragunier Masonry v. Catholic Univ.*, 368 Md. 608, 796 A.2d 744, 755 (2002). The discovery rule focuses the judicial inquiry on the knowledge of the complaining party by permitting courts to toll the accrual of the limitations period until the time the plaintiff discovers, or through the exercise of due diligence, should have discovered, the injury. *See Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677, 681 (1981). Thus, when the date of the breach and the discovery of the breach are the same, the discovery rule is satisfied. *See, e.g., Bragunier Masonry*, 796 A.2d at 757.

■ Appellant has the burden of proving that the discovery rule applies. *Newell v. Richards*, 323 Md. 717, 594 A.2d 1152, 1156 (1991); *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 469 A.2d 867, 893 (1984). To establish entitlement, Appellant must show that Maxima acted with reasonable diligence in determining the fact of injury, but was unable to discover it. *Poffenberger*, 431 A.2d at 681. Where the rule's application involves a factual determination regarding whether a plaintiff exercised due diligence in discovering his or her injury, the jury must decide the issue. *Frederick Rd. Ltd., supra*, 756 A.2d

at 984. However, when reasonable minds would not differ that a plaintiff has failed to exercise due diligence in discovering the existence of his injury, the Court may decide the matter on summary judgment. *See, First Virginia Banks, Inc. v. BP Exploration & Oil Inc.,* 206 F.3d 404, 407 (4th Cir.2000).

## III. *ANALYSIS*

The Court finds that the statute of limitation for Appellant's cause of action began to run, at the latest, on November 17, 1993, and February 3, 1994, and it expired on November 17, 1996, and February 3, 1997, respectively. After Maxima sent the invoice to Appellee and did not receive payment according to the contract terms, it could state all essential elements of the claim. Thus, Appellant's claim is time-barred.

Appellant argues that, because Appellee failed to provide evidence that it "approved" and received the invoices in October 1993 and January 1994, the statute of limitations could not have commenced running. Appellant directs the Court's attention to section E.7 of the subcontracts, which provides:

> Inspection and acceptance of all items, work, and effort under this subcontract shall be accomplished by Prime Contractor's Project Officer or his designee. All approved invoices shall be paid within

thirty (30) days after Prime Contractor *receives* an approved invoice.
(emphasis added.) [2]

The Court finds Appellee's receipt and approval irrelevant to the judicial determination of the accrual date. First, section E.7 makes clear that Appellee was to pay Maxima upon receipt of an approved invoice, not, as Appellant suggests, after Appellee approves the invoice. *See Catalina Enter. v. Hartford Fire Ins. Co.,* 67 F.3d 63, 66 (4th Cir.1995) ("It is axiomatic under Maryland law that a court should avoid reading a contract in a way that produces an absurd result, especially when a reasonable interpretation is available."). Thus, Appellee's duty to pay the invoice within thirty days of receipt is not relevant to the issue of whether Maxima discovered its cause of action.

Second, even if receipt can be considered a condition precedent to Maxima's cause of action, Maxima had sufficient facts within its control in November 1993 and February 1994, to infer receipt and state a claim for breach of contract, in federal or state court. *See* FED. R. CIV. PROC. 9;[3] MD. RULE 2–304(b);[4] Undoubtedly, in November 1993 and February 1994, Maxima knew the existence of a debt—in fact, the specific amount of the debt—and knew exactly who owed it. Maxima also had within its possession a copy of an invoice, addressed and apparently mailed directly to Appellee, with every reasonable indication that Appellee

---

**2.** The parties agree that the "Prime Contractor" was Appellee.

**3.** FED. R. CIV. PROC. 9(c) provides:
> (c) **Conditions Precedent.** In pleading the performance or occurrence of conditions precedent, it is *sufficient to aver generally* that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity.

(emphasis added.)

**4.** MD. RULE 2–304(b) provides:
> (b) **Conditions Precedent.** In pleading the performance or occurrence of conditions precedent, it is *sufficient to aver generally* that all conditions precedent have been performed or have occurred.
(emphasis added)

was in receipt, *i.e.*, the postal service did not return the invoice as undelivered, nor did circumstances suggest that Appellee was avoiding service. *See Morris v. Osmose Wood Preserving*, 340 Md. 519, 667 A.2d 624, 630–31 (1995) (plaintiff's complaint entitled to all reasonable inferences); *Allied Inv. Corp. v. Jasen*, 354 Md. 547, 731 A.2d 957, 961 (1999) (all doubts resolved in favor of plaintiff on a motion to dismiss for failure to state a claim); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir.1999). Armed with this information, and coupled with the fact that the final invoice went unpaid for more than thirty days, Maxima had "notice of any *possible* breach of contract." *Bragunier Masonry*, 796 A.2d at 757. (emphasis added) (affirming summary judgment where statute of limitations expired on breach of contract claim).

A mistaken belief that Appellee's potential defenses prevented the filing of suit did not suspend the running of the limitations period. *Himelfarb*, 484 A.2d at 1016. The Court in *Himelfarb* explained:

From the standpoint of the Maryland common law of contracts, [a defendant]'s claimed defense is as ineffective to prevent accrual of the creditor's cause of action as is a debtor's statement that he mailed a check in full payment which the creditor should have received, or that his signature on a document evidencing the obligation is unauthorized, or that he is excused from paying because of material breach in the creditor's performance. The limitations clock begins to tick while the creditor is deciding whether an asserted defense is meritorious.

*Id* at 1016. *See also, Chappelle's v. Sanders*, 442 A.2d 157, 158 (D.C.1982) ("A mere doubt in the mind of a party in connection with his legal rights, or his right to recover in a lawsuit, will not suspend the running of the statute of limitations.") (citations

omitted); *Washington Sec. Co. v. State*, 9 Wash.2d 197, 114 P.2d 965, 967 (1941) ("Mere doubt in the mind of respondent as to its right to recover could not suspend the running of the statute.").

Moreover, if Maxima did not know, or have reason to know, of the breach in November 1993 and February 1994, the facts of this case raise an overwhelming inference that Appellee was in breach after October 24, 1994, when another invoice was sent and went unpaid. Even if the Court were to believe that accrual date began at that time, Appellant's claim would remain stale because Maxima filed for bankruptcy protection on June 26, 1998, and the three-year statute of limitations would have expired on November 24, 1997 (assuming the applicability of the thirty-day grace period). Surely by November 1997 the circumstances put Maxima on notice that something was wrong. The Court in *Poffenberger, supra,* explained:

[T]he discovery rule contemplates actual knowledge that is express cognition, or awareness implied from knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry (thus, charging the individual) with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. In other words, a [complaining party] cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he will be held guilty of bad faith and must suffer from his neglect.

431 A.2d. at 681. (internal citations and quotations omitted.).

■ Adopting Appellant's position would make statutes of limitation meaningless. Under Appellant's view, a creditor could extend the statute of limitation be-

yond that contemplated by the Maryland legislature by delaying or neglecting to send an invoice. Moreover, a debtor could stymie a creditors ability to collect the debt by denying receipt of the invoice, or never approving the invoice once received. Indeed the flaw of Appellant's position was highlighted when she suggested that the statute of limitations did not begin to toll until Appellee filed its Answer on July 27, 2001. This Court agrees with the intermediate appellate court in Maryland that "[c]ourts should refuse to give statutes of limitations a strained construction to evade their effect." *Doe v. Archdiocese of Washington,* 114 Md.App. 169, 689 A.2d 634 (1997).

The Court's ruling is also consistent with the purpose of statute of limitations. Here, the parties reached a contractual agreement more than fifteen years ago, and completed performance under the contract soon thereafter. Yet, pursuant to their contract, they waited until late 1993 and 1994 to establish a final rate of payment. When the government established the final rate, and the thirty days expired, the contract was more than ripe for payment. To allow Appellants to stretch the accrual date beyond November 1993 and February 1994, or allow Appellant unilaterally to mold its own accrual date by extending the thirty-day requirement for payment, would be to circumvent the goal of providing defendants and courts a degree of protection from stale claims. *See Gould, supra.*

Finally, Appellant asserts that summary judgment is inappropriate where she has not had the opportunity to complete discovery. Appellant contends that she needs additional discovery to "sort out facts and to create a proper record for summary judgment." The Court disagrees. The party seeking additional discovery bears the burden of showing what specific facts she hopes to discover that will raise an issue of material fact. *Evans v. Tech. Appl. & Serv. Co.* 80 F.3d 954, 961 (4th Cir.1996). Because Appellant alleges no essential fact today that Maxima could not have alleged in November 1993 and February 1994, the Court finds additional time for discovery unnecessary.

In sum, because Appellant filed her claim on behalf of Maxima more than three years after the accrual date, Appellant's breach of contract claim is time-barred. Finding no other material fact in dispute, the Court finds summary judgment appropriate.

## CONCLUSION

For the reasons stated above, the Court will AFFIRM the judgment of the bankruptcy court. An Order consistent with this Opinion will follow.